RAFAEL LUIS VIDAL LASSISE, Petitioner, *v.* DISTRICT COURT OF MAYAGÜEZ, HON. ANGEL FIOL NEGRÓN, JUDGE, Respondent.

No. 25.   Argued June 1, 1950.—Decided June 19, 1950.

*Oscar Souffront* for petitioner.

Mr. Justice Marrero delivered the opinion of the Court.

The petitioner herein brought unlawful detainer proceedings in the Municipal Court of Mayagüez against Luis Enrique Santaliz. The essential allegations of his complaint were that since September 24, 1948 he owned a house, which he describes; that together with his family the defendant occupied that house as a tenant for more than five years, by virtue of a verbal month-to-month contract with the former landlord at a rental of $25 a month; that on September 30 he notified defendant by a registered special delivery letter that he needed in good faith the dwelling, that he did not intend to rent it again and would occupy it as a place of

residence for himself and his family, for which reason he should vacate it and leave it free and ready for the plaintiff's disposal within the term of sixty days; that the defendant refused to do so whereupon he filed unlawful detainer proceedings on December 7, 1948, but that since the six-month term prescribed by the Insular Act, beginning from the notice, had not expired, the complaint was dismissed; that after the expiration of said term he again requested permission from the Federal Rent Control office for an eviction certificate against the defendant which was granted notwithstanding the latter's opposition and that in spite of the expiration of said six months defendant has not vacated the premises.

After an answer in which all the facts alleged in the complaint were denied and after raising the special defenses that (a) the defendant has not complied with all the notice requisites applicable to actions of this nature; that (b) the complaint does not state facts which constitute a cause of action; and that (c) the court lacks jurisdiction to entertain this case, the same was heard in the municipal court which rendered judgment granting the complaint. From this judgment an appeal was taken to the District Court of Mayagüez, where with leave of the court an amended complaint was filed. After presenting a stipulation of facts and raising certain questions of law the case was heard. Only the plaintiff presented evidence. The district court, citing, among others, the case of *Vélez v. San Miguel*, 68 P.R.R. 534, reached the conclusion that no lease contract existed between the plaintiff and the defendant since, in its opinion, "in the absence of an express or implied agreement to the effect, . . . the fact that the plaintiff received payment from the defendant for the use and occupancy of his property after the latter's purchase does not create by itself a new lease contract nor implies continuation of the former one. . . ."[1]; that since

---

[1] The evidence showed that the petitioner had received from defendant the sum of $25 monthly since he purchased the property.

defendant is an unlawful occupant (a *detentador*) of the property the unlawful detainer suit should not have been filed in the municipal court; and that since the latter lacked jurisdiction to entertain the case in the first instance, it likewise lacked jurisdiction to hear the same on appeal. Reconsideration was sought and denied. At the plaintiff's request we issued a writ of certiorari.

In *Vélez* v. *San Miguel, supra,* the plaintiff purchased a house on September 14, 1946, intending to live in it himself. On October 1, 1946 he obtained from the OPA a certificate, then required by federal law and regulations, which authorized him to institute a proceeding in accordance with local law, not sooner than January 23, 1947, in order to evict the defendant, lessee of the former owner and notified him that he needed the house purchased by him and that he should vacate it. On March 24, 1947 the plaintiff filed an unlawful detainer suit in the district court which rendered judgment for plaintiff. The defendant maintained that since the purchaser had received the rentals corresponding to the months of October and November and since said rent, in yearly payments, was less than $1,000,[2] the jurisdiction was in the municipal, not the district court. This Court decided by a majority [3] that in seeking to determine whether the parties entered into a new contract, it must be borne in mind that by fiat of federal law the plaintiff could not evict the defendant for several months. During that period, while plaintiff was waiting for the certificate of eviction to go into effect, he was entitled to receive compensation for use of the house; that there was no reason in law or logic which com-

---

[2] See § 622 of the Code of Civil Procedure, 1933 ed., which provides that "The municipal judges of the districts in which the property is situated shall have jurisdiction to hear and determine actions of unlawful detainer in all cases in which the amount specified in the lease as rental, or the consideration or sum which should be paid by virtue of any contract, does not exceed one thousand dollars, computed annually. In all other cases the district court of the district where the property is situated shall have jurisdiction of the action, . . ."

[3] Mr. Justice Todd, Jr., and the writer of this opinion dissented.

pelled the Court to hold that collection of this debt, admittedly due, had to be postponed until after ouster of the defendant, by which time collection might be highly uncertain; and that if the plaintiff had not taken any of these steps, and had confined himself to accepting money from the defendant which both parties called "rent", a new contract between the plaintiff and the defendant would have been effectuated; and it was decided that "the acceptance of money for use of property does not in itself create a new lease contract between the purchaser of a house and the tenant of the former owner when all the other circumstances point to a contrary result."

In the present case, as indicated, the plaintiff purchased the property on September 23, 1948 and six days later notified the lessee of the former owner that he should vacate it, since he needed in good faith the premises to live in it with his family. For that purpose the plaintiff granted him a term of sixty days counting from the date of the letter sent to him. However, the defendant did not vacate the premises and the plaintiff filed an unlawful detainer suit against him on December 7, 1948, which was dismissed on the ground that the term of six months fixed by the Reasonable Rents Act had not expired.[4] After the six months expired, the plaintiff, considering that it was his duty to comply with the provisions of the federal law and regulations,[5] requested a new certificate from the Federal Rent Control Office in San Juan. That certificate was granted to him over defendant's opposition[6] and it authorized him to file complaint at any time subsequent to July 29, 1949. Thus, on August 18, 1949,

---

[4] No. 464 of April 25, 1946 (p. 1326) known as the Reasonable Rents Act.

[5] We are not deciding in this case in any way whether at the time of the facts involved herein it was necessary to obtain a certificate from the Federal Rent Control Office in San Juan for that purpose before bringing an unlawful detainer suit.

[6] In notifying the defendant that he should vacate the premises, the plaintiff had also obtained a certificate from the Office of the Housing Expediter of Puerto Rico. Based on this certificate he filed his complaint on December 7, 1948, which was dismissed because it was premature.

he filed the complaint in the Municipal Court of Mayagüez which is the subject matter of this appeal.

The petitioner now argues that the present case is distinguishable from *Vélez* v. *San Miguel, supra,* since subsequently § 12 of Act 464 of 1946, *supra,* was amended by Act No. 201 of May 14, 1948, (pp. 574, 578), adding § 12-A which did not exist in the original Act.

Section 12, as amended, provides:

"*Regardless of the date of* construction or *occupancy of both dwellings* and business premises, *and irrespective of any change of landlord* or nominal lessor, *the lease contract shall, on the day of expiration agreed upon therein, be compulsorily extended by the lessor at the option of the tenant or lessee,* without altering any of the clauses thereof, all of which shall be deemed in force. The foregoing is applicable both to written and oral contracts and the extension shall be understood for the terms fixed by Section 1471 of the Civil Code,[7] but **never** for a period longer than the duration of the emergency declared in this Act. . . . " (Italics ours.)

And § 12-A in its pertinent part provides:

"As exceptions to the provisions of the preceding section, *the lessor may refuse the extension of the lease contract* and, consequently, commence unlawful detainer proceedings only in the following cases:

".    .    .    .    .    .    .    .    .

"6. *Whenever he needs in good faith the dwelling,* or part thereof, *for his personal use* and immediate occupancy *as a place of residence.*

".    .    .    .    .    .    .    .

"*b. The lessor shall serve on the affected lessee authentic written notice* of the necessity which he has of occupying the dwelling and shall require him to vacate the same, all *at least six months in advance of the date when he desires to occupy the dwelling. The lessor may not file unlawful detainer proceedings until after said six (6) months have elapsed.*" (Italics ours.)

---

[7] Section 1471 of the Civil Code, 1930, reads:

"Should a term not have been fixed for the lease, it is understood for years, when an annual rent has been fixed, for months, when the rent is monthly, and for days, when it is daily."

550

As we have seen, pursuant to § 12 of the Act, as amended, when a leased property is purchased by another person, the lease contract shall be compulsorily extended by the lessor at the option of the tenant or lessee. Nevertheless, pursuant to provisions of § 12–A of the same Act, as an exception to the above, the lessor may refuse the extension of the lease contract, among other reasons, whenever he needs in good faith the dwelling, or part thereof, for his personal use and immediate occupancy as a place of residence. Nevertheless, before bringing his suit, he shall serve on the affected lessee authentic written notice of the necessity which he has of occupying the dwelling and shall require him to vacate the same, all at least six months in advance of the date when he desires to occupy the dwelling. The lessor may not file unlawful detainer proceedings until after said six (6) months have elapsed.

When the plaintiff served written notice on the affected lessee six days after he purchased the property his action clearly meant a refusal to extend the contract and the termination of the same. It is true that he did not bring the unlawful detainer suit as we have already said, until August 18, 1949, that is, until ten months eighteen days after having requested the defendant to vacate the premises and that during all that time he accepted the monthly sum of $25 which was the rent that defendant had been paying to the former owner. But the acceptance of that money could not mean, nor did it mean in any way, the entering into a contract between plaintiff and defendant. The former had already refused the extension of the previous lease contract and terminated the same by express and explicit acts. The delay in bringing his action can be clearly explained: during the first six months immediately following the notice he served on the defendant, by operation of the Insular Act he could not file an unlawful detainer suit and after the six-month term elapsed he thought it was his duty to obtain the afore-mentioned certificate from the Federal Housing Expediter. He

filed his complaint twenty days after the term fixed in said certificate had expired. His actions always showed that his purpose was to terminate the lease contract. The amounts received by him were, consequently, as compensation for the use of his property and not as rent. Notwithstanding the payment of a certain monthly sum for the use of the premises which he occupied, the defendant was an unlawful occupant (*detentador*). This being so, the municipal court lacked jurisdiction to take cognizance of the proceeding and so did the district court on appeal.[8]

The writ issued will be quashed.[9]

---

MR. JUSTICE TODD, JR., dissenting.

I dissent. The attendant circumstances in the present case convince me more strongly that the case of *Vélez* v. *San Miguel*, 68 P.R.R. 534, was wrongly decided. In the latter, rentals were accepted for only two months. In the present case they were accepted during ten months—four more than the six months required by § 12-A(*b*) of the Reasonable Rents Act. Nevertheless, it is maintained by the majority that there was no extension of the lease contract. Based on this reasoning whenever a plaintiff continues to receive rent for a year or two, after the expiration of the six months, and gives reasons which are considered "clearly justifiable" for the delay, whether or not they are legal reasons, as long as the plaintiff believes that he is fulfilling his duty, I presume that it will likewise be decided that there was no extension of the lease. I cannot accept conclusions that disagree with proved facts and I insist on my dissent in *Vélez* v. *San Miguel*, *supra*. I cannot yet understand how a person who pays rent or compensation for the use of a property can at the same time be considered an unlawful occupant (*detentador*) of the house.

[8] See note 2.

[9] Although the writer in this case dissented in *Vélez* v. *San Miguel*, *supra*, a new study of the matter has convinced him that under the attendant circumstances therein his dissent was not justified.